# First Methodist Episcopal Church v. Arthur Dixon et al.

1. STATUTES—*Construction of—Intention of the Law Makers.*—In the construction of statutes, the intention of the law-giver is to be deduced from a view of the whole and every part of a statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms.

2. SAME—*Construction of the Act of 1865.*—The act of 1865 (Private Laws 1865, Vol. 1, 238), amending the act of February 14, 1857, relating to the changing of the name of the Methodist Episcopal Church of Chicago, and for other purposes, and to enlarge the power thereof, is construed to embrace the making of a ground lease, as well as any other lease of the whole or any part of said premises belonging to said church, in Chicago.

3. TRUSTS—*Injuries Tending to Defeat the Purpose of.*—An injury which tends to defeat the power of the trust to provide revenue to be applied to building up Methodist churches in Chicago must be regarded as serious.

**Bill to Construe a Trust.**—Trial in the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Hearing and decree for complainants. Appeal by defendants. Heard in the Branch Appellate Court of the First District, at the March term, 1898. Affirmed. Opinion filed May 31, 1898.

## STATEMENT.

Appellees, as trustees of the First Methodist Episcopal Church of Chicago, filed a bill to obtain a decree construing certain trusts upon which they hold the property known as the Methodist Church Block, on the southeast corner of Washington and Clark streets in said city. These trusts are defined in two special acts of the legislature, the material parts of which are as follows:

First. An act, approved February 14, 1857, entitled, "An act to change the name of the Methodist Episcopal Church, in the Town of Chicago, Cook County, Illinois, and for other purposes.

"Section 1. Be it enacted by the State of Illinois, represented in the General Assembly, that the name of that

religious society, incorporated on the 20th day of November, A. D. 1835, under the provisions of an act entitled 'An Act Concerning Religious Societies,' approved on the 6th day of February, A. D. 1835, by the name of the 'Methodist Episcopal Church, in the Town of Chicago, Cook County, Illinois,' be and the same is hereby changed to, and shall hereafter be known as the 'First Methodist Episcopal Church of Chicago,' and in and by such name shall have and exercise all the powers conferred on such corporations, organized under the 'Third Division of the twenty-fifth chapter' of the Revised Statutes; and the present trustees of said corporation first above mentioned, shall be, and are hereby constituted, trustees of said 'First Methodist Episcopal Church of Chicago,' until their successors are elected, in pursuance of said 'Third Division' of said chapter of the Revised Statutes; and said trustees of said last named corporation, and their successors, shall hold and possess in fee, all the property, real and personal, donated to, and held, and belonging to said corporation first above named.

"Sec. 2. Said 'First Methodist Episcopal Church of Chicago' shall have power to convey said property in fee, by deed or mortgage, in security for money loaned or to be loaned thereon, for the erection on such real property of a place of worship, or such other improvements as may be desired. But after the erection of such place of worship or improvements, if any surplus remain, the same, and any rents which may accrue from said property, shall first be appropriated for the payment of such loan, and extinguishment of such mortgage; and any remainder to the purchase of a lot or lots in said city of Chicago, and the erection of a place or places of worship, to be under the control of the Methodist Episcopal Church, and for no other purpose whatever."

Second. An act to amend an act entitled, "An act to change the name of the Methodist Episcopal Church, in the Town of Chicago, Cook County, Illinois, and for other purposes, approved February 14, 1857, and to enlarge the powers thereof.

. . "Section 1. Be it enacted by the people of the State of Illinois, represented in the General Assembly, that on and after the second Monday in January, A. D. 1866, the trustees of 'the 'First Methodist Episcopal Church of Chicago' shall consist of nine persons, who, on said day, shall be elected by the society constituting said 'First Methodist Episcopal Church of Chicago,' and that other society known as 'Trinity Methodist Episcopal Church of Chicago,' by joint ballot, whether they constitute one or separate societies. Of the trustees so to be elected, three and their successors shall be members of each of the above mentioned societies, and the remaining three and their successors shall be members of other Methodist Episcopal churches or societies in the city of Chicago, but no two of these last shall belong to one and the same society. At said first election three of said trustees shall be chosen to serve for one year, three for two years, and the remaining three for three years; and annually, thereafter, on the second Monday in January, the successors of those whose terms have expired shall be in like manner elected for three years, and at the same time elections shall be held to fill vacancies caused by death, removal from the city of Chicago, or otherwise; said elections to be called and held in accordance with by-laws to be established by said societies in joint meeting. Said trustees, so elected, shall have power to control and manage the real property belonging to said corporation, and to dispose of the rents accruing therefrom, in conformity with the provisions of this act, and the act to which this act is amendatory; and they shall hold their office until their successors shall be chosen, and a failure to elect trustees at any of the times above described shall in no way affect the existence or powers of said corporation, but their successors may be chosen at any annual election thereafter.

. "Sec. 2. That whenever twenty certain bonds for one thousand dollars each, executed by said 'First Methodist Episcopal Church of Chicago,' on the first day of January, A. D. 1859, and secured by a deed of trust to George C.

Cook, of the lot and building owned by said corporation, shall have been fully paid, it shall be lawful for the trustees of said corporation to purchase, hold and use a parsonage house and lot, or to purchase a lot and erect a parsonage house thereon, and keep the same in repair, for the use of such ministers of the gospel as may from time to time be duly appointed according to the discipline of the Methodist Episcopal Church to minister to the congregation worshiping in said building; and they may also, at their discretion, aid in the erection of church buildings within said city of Chicago, for the use and under the control of the said Methodist Episcopal Church, and may, from time to time, purchase lots within said city for the erection thereon of a place of worship, and convey the same to societies of said church for such use, and to be under such control; said parsonage or parsonage lot may be purchased at any time, but no part of the rents derived from the building aforesaid shall be applied toward payment of the same until all said bonds and all interest due on all incumbrances on said property shall have been fully paid; and said trustees shall not, for the purposes aforesaid or for any other purpose, except for the purchase of said parsonage, or the repair or re-erection of said building, contract liabilities which shall at any time exceed in the aggregate the net rents of said building in any one year.

" Sec. 3.    Said trustees may appropriate of the rents derived from said building for the repair and refitting of any part thereof, whether used for public worship or otherwise, and also not exceeding one thousand dollars per annum for the support of the minister, from time to time, appointed as aforesaid, to preach the gospel to the congregation worshiping in said building.

" Sec. 4.    In order to secure the payment of any indebtedness now owing by said corporation or any part of such indebtedness, or in case of the destruction or serious injury of said building from any cause, the same and the lot on which it stands may be conveyed by said trustees, by mortgage or deed of trust, as security for money borrowed to

pay such indebtedness, or to re-erect or repair said building, but shall not be aliened or conveyed for any other purpose whatever.

" Sec. 5. All the provisions of the act to which this is amendatory shall remain in full force so far as they are not inconsistent herewith."

Wm. D. Barge, attorney for appellant.

Wilson, Moore & McIlvaine, attorneys for appellees.

Mr. Justice Freeman, after making the foregoing statement, delivered the opinion of the court.

Powers are expressly conferred upon the trustees by these acts, substantially as follows:

By the act of 1857, first, "All the powers conferred on such corporations organized under the Third Division of the twenty-fifth chapter of the Revised Statutes; " second, to " hold and possess in fee all the property, real and personal, donated to, and held and belonging to said corporation; " third, " to convey said property in fee by deed or mortgage in security for money loaned or to be loaned thereon for the erection on such real property of ' a place of worship, or such other improvements as may be desired; ' " fourth, after payment of such loan the remainder of any surplus and any rents accruing to be applied to the purchase of lots in Chicago, and the erection of places of worship under control of the Methodist Episcopal Church, " and for no other purpose whatever."

By the amendatory act of 1865 enlarging the powers conferred by the act of 1857, the trustees are empowered, fifth, " to control and manage the real property belonging to said corporation, and to dispose of the rents accruing therefrom in conformity with the provisions of this act, and the act to which this act is amendatory; " sixth, to purchase, hold and use, and keep in repair a parsonage house and lot, or to purchase a lot and erect a parsonage thereon, for the use of the Methodist Episcopal minister appointed

First Methodist Episcopal Church v. Dixon.

to minister to the congregation worshiping in said building; seventh, to buy lots and aid in the erection of church buildings in Chicago for other societies of the Methodist Episcopal Church, but they shall not for any purpose except purchase of parsonage or repair or re-erection of the building, contract liabilities exceeding the aggregate net rents in any one year; eighth, to appropriate money out of the "rents derived from the said building for the repair and refitting of any part thereof, whether used for public worship or otherwise;" ninth, to appropriate out of such rents "not exceeding one thousand dollars per annum for the support of the minister" appointed to preach " to the congregation worshiping in said building;" tenth, in order to secure payment of their existing indebtedness, " or in case of the destruction or serious injury of said building from any cause," to convey said building and lot by mortgage or trust deed as security for money to pay such debt, " or to re-erect or repair said building."

These express powers of the trustees may be further summarized as follows: They have power to hold in fee and control and manage the real property; to borrow money on and incumber the lot in question, in order to erect a place of worship or such other improvements thereon as may be desired, or to pay existing indebtedness, or in case of the destruction or serious injury of said building, to repair or re-erect the same, and also to contract liabilities for the repair or re-erection of said building, and the purchase of a parsonage for the minister preaching therein; to purchase lots for and to aid in building Methodist Episcopal Churches in Chicago from time to time, but not to such an extent as to contract total liabilities exceeding at any time the aggregate net rents of said building in any one year; to appropriate out of the rents derived from said building, money to repair and refit any part thereof, whether used for public worship or otherwise, and not exceeding $1,000 per annum, for the support of a minister for the congregation worshiping therein.

The trustees are forbidden, by the act of 1857, to use the

surplus and rents "for any other purpose whatever," except as specified, and are also forbidden by the act of 1865, to alien or convey said lot and building for any other purpose whatever.

The trusts created by these acts are sought to be construed in three particulars.

First.    Is it the duty of the trustees to maintain a place of worship upon this particular property?

Second.    The power of the trustees to mortgage said property in order to erect a new building thereon.

Third.    The power to make a ground lease.

Must a place of worship be maintained upon this property?

The act of 1835, under which the society was first incorporated, authorized its members to erect such houses and buildings as they may deem necessary for the purposes of religious worship, " and to make such other use of the land, and make such other improvements thereon as may be deemed necessary for the comfort or convenience of such society or congregation." But the act of 1857 removed these limitations in part, and allowed the trustees to borrow money for the erection either of a place of worship, " or such other improvements as may be desired." The act of 1835 authorized the erection of a place of worship and other improvements, such as might be deemed necessary for the comfort and convenience of the congregation, but these improvements were apparently intended to be such as were incidental to, and connected with the place of worship. By the act of 1857, the trustees could erect either a place of worship or the other improvements, and they can, as appears from provisions of the two later acts, maintain both.

It is clear that these improvements were expected to be of a rent-producing character. The act of 1857 especially provides for the disposition of "any rents which may accrue." It is true that the original incorporation in 1835 was "for the purposes of religious worship," and the act provided that the land acquired could be " held for the uses and purposes named, and no other," viz., religious worship. But the act of 1857 enlarged the scope of these uses and pur-

First Methodist Episcopal Church v. Dixon.

poses.   By that act the purpose still was, not that a place
of worship should necessarily be maintained on the land,
but that the rents accruing from whatever other improve-
ments might be erected there, should continue to be applied
for the purposes of religious worship, in erecting places of
worship elsewhere in the city.

Thereafter, by the act of 1865, these powers were in no
way diminished, but were enlarged; and to indicate more
clearly that there was no intention to restrict the use of the
property to the purposes of a single congregation, it was
provided that only one-third of the trustees should be chosen
from the original society—the First Methodist Episcopal
Church—while the other six trustees were to come, three
from the Trinity Church, and three from other societies, con-
stituting the general body of the Methodist Episcopal
Church in Chicago.   Indeed the appropriation out of the
rents toward the support of a minister for the congrega-
tion worshiping upon the property is limited to $1,000
annually, much less than an adequate salary, the bal-
ance of the rents being reserved for the other uses speci-
fied.   This balance is not appropriated for the support of
that particular church.   It is to be applied chiefly to the
purchase of lots and erection of places of worship in Chi-
cago, which may be conveyed to societies of, and be for the
use and under the control of the Methodist Episcopal
Church.

The sale of the property in question is expressly forbid-
den; and if the trustees must retain a place of worship on
these premises, then no matter how undesirable for such a
purpose the locality may become, no matter though the con-
gregation should refuse or be unable to maintain worship
there, no change would be possible.   The evidence tends to
show that it is a serious question as to whether the congre-
gation worshiping there will be able to maintain preaching
at that place for any great length of time; that the present
attendance is from seventy-five to one hundred and twenty
persons, while the place of worship provided there has seat-
ing capacity for a thousand.   This decline is stated to be

continuing and believed to be permanent. If it continues until there is no congregation left there able to support religious services, then the maintenance of a place of worship upon the property in question, not in use nor expected to be used, in the heart of the business district of the city, would seem to be of more than doubtful propriety.[1] It is not, we think, required by the acts under which the First Methodist Episcopal Church of Chicago is organized and exists.

Can the trustees mortgage the real property belonging to the corporation in order to erect a new building thereon?

The power to mortgage in order to secure money borrowed to re-erect or repair the building on the lot in question may be exercised " in case of the destruction or serious injury to said building from any cause." Stated plainly, the query here is, can the trustees tear down the present structure, which the evidence tends to show is inadequate, out of repair, and improperly constructed for the locality and the conditions which now exist there, and mortgage the property, or convey it by deed of trust to obtain money to erect a new building better adapted for the purposes for which the trust exists? The building has not been destroyed nor has it been seriously injured by any direct agency such as fire, storm or flood. The evidence does indeed tend to show that it has been so injured, but the injury has been gradual, from other and slowly acting causes. Under the language of the statute the injury must be serious, and if it is so, then the cause is not material. Any cause producing serious injury is sufficient.

In determining what degree and character of injury must be considered as serious within the purport of the statute, regard must be had to the whole meaning and intent of the acts under consideration. This is a well settled and familiar rule.

" It is an established rule, in the construction of statutes, that the intention of the law-giver is to be deduced from a view of the whole and every part of a statute taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms." Hamilton v. The State, 102 Ill. 367.

Any injury which tends to defeat the purpose of the trust to provide revenue to be applied to building up Methodist churches in Chicago, must be regarded as serious. The trustees "hold and possess in fee" the property in question for the purposes of the trust. It is not an ownership for a limited time, but for all time so far as the statute provides. In ordinary human experience buildings suitable for the needs of one generation are frequently not adapted to the wants of the next. To require such a building to be retained when its income-producing capacity is gone, or so greatly reduced as practically to defeat the object of the trust, would be to require the preservation of a relic of the past, and this is no part of the purpose for which the trust has been created. The evidence tends to show that the present building is unsuited to the needs of the locality where it stands. It is impracticable to remodel it. It is not of fire proof construction. It is without steam heat, without vaults, and without elevator service. One floor is devoted to an audience room for a large congregation, which has practically departed. A building which time and changing conditions have rendered so seriously defective, has certainly suffered injury within the scope and contemplation of the statute, and it is within the power of the trustees to remove it and erect another in its place.

The third of the questions presented for our consideration is, have the trustees power to make a ground lease of this property.

The testimony tends to show that it may be good business management to erect upon this property a modern high-class office building to take the place of the present structure, which is not adapted to the needs of the locality, and is of a character and construction such that it would be impracticable to remodel it, and cheaper to tear it down than to repair and reconstruct it. The erection and management of a modern, high-class, expensive building is said to be an enterprise requiring careful and experienced business management. It is probably true, as stated by appellees' counsel, that it is at least of doubtful expediency for

the trustees of a church corporation to enter upon such an enterprise. In case, therefore, the trustees should be advised that this is the wisest plan for the use of the property to carry out the purposes of the trust, it may become their duty to consider the propriety of making a long ground lease to competent persons who may be willing to assume the business risk and management, and pay a fixed rental for the property.

By the act of 1865 the trustees are given "power to control and manage the real property belonging to said corporation." We perceive no reason why this power to control and manage does not embrace the making of a ground lease, as well as any other lease of the whole or any part of said premises. The trustees are given power also " to dispose of the rents accruing " from said real property, in conformity with the provisions of the act. There can be no doubt, we think, but that this power to control and manage and dispose of the rents from " the real property " belonging to said corporation, applies to ground rents equally with other rentals, and that the trustees have full power to make leases for the one equally with the other. The judgment of the Circuit Court is affirmed.